Good morning, Your Honors. May it please the Court. My name is Marissa Darcy from Federal Defenders on behalf of the appellant Norberto Reveles-Espinoza. We're asking this Court to reverse Mr. Reveles' prior conviction as his deportation is invalid. At the time of his deportation, the immigration judge failed to advise him of his eligibility for cancellation of removal. Now, she specifically found at that time that Mr. Reveles' prior conviction for Health and Safety Code 11358, cultivation of marijuana, was an aggravated felony. This is where the error occurred. It's our position that 11358 is not an aggravated felony. Now, when we begin with the teller analysis looking at that first step, the conduct prohibited in 11358 is broader than that prohibited under the federal statute. Now, 1101A43B defines aggravated felony and makes reference to 924C and then Section 802 of the Controlled Substances Act. 802.15 and 802.22 both define manufacture and production. Now, specifically, 11358 criminalizes anyone who plants, cultivates, harvests, dries, processes any part of marijuana. Now, in this case, the specific language that I'm focusing on is the language dry. That conduct is not prohibited under the federal definition of manufacturing and production. Now, for example, if an individual under state law were to pick leaves off of a marijuana plant, give those leaves, that person would be guilty of 11358. I can't fathom how a person who did that same conduct would be guilty under 841, the federal manufacturing statute. Now, alternatively... Because drying, in that sense, wouldn't be part of processing? Drying is not processing. Under the state statute, when you look at that language, it would constitute different behavior. Otherwise, the state statute would not include both drying and processing. Also, under the Taylor analysis, the actual conduct that we're looking at here, or the statute itself, excuse me, the 11358, also includes aiding and abetting liability. Well, now, I don't know how you get to the aiding and abetting. I don't know how he gets around the fact that, doesn't it say back in the record, I mean, he's cultivating. He's got the plants there, and he just, he tells the IJ. I just didn't know it was that serious. That's not true. Well, answering a couple of your questions, at the immigration hearing, the immigration judge asked him what happened, and he said, someone had given me the plant. I then, in turn, held the plant. That actually could constitute aiding and abetting liability. But I think the important question here is, what do we look at in determining what conduct actually happened? And we can't look to the transcript of the immigration proceeding in conducting a modified categorical approach. Taylor doesn't allow for that. Shepard doesn't allow for that. And the government, in a recent 28-J letter, advocated that the court look at that. In the case of Tocatli v. Ashcroft, it's 371F613 at 621. The court stated there, when we're conducting a modified categorical approach, we can't look specifically, they had an immigration proceeding. The government would need to rely on the JNC, the information, a plea colloquy, jury instructions. That's what we should be looking at. So, it is clear that it is implicit under CalPINO Code 971. Aiding and abetting liability is implicit in every information, and that is the problem here. The government didn't submit documentation to show that this wasn't an aiding and abetting conviction. And this court has held previously in Martinez-Perez, in Peñuliar v. Ashcroft, in Corona-Sanchez, that aiding and abetting liability is encompassed within that conduct. And in that first stage of Taylor, the conduct is actually broader. And then we do need to go to that second step and engage in a modified categorical approach. Taking that a farther step, the other problem that we have is the issue of natural and probable consequences, which the government addresses in their brief as well. Although both the federal aiding and abetting liability addresses natural and probable consequences, as well as the state, the state's interpretation of that is much, much broader. The state actually does not require that the aider and abetter share the intent of the principal actor. And that's in cases such as Prettyman and Beeman and Holdings do require that the aider and abetter share that same intent. So again, going back to the statute of conviction 11-358, we have conduct that is much broader than the generic or federal definition of aiding and abetting liability. Now some issues tied to this case, currently the case of Duenas-Alvarez is pending before the Supreme Court, which addresses a very similar issue. In the event that Mr. Duenas were to prevail before the Supreme Court, then it would logically follow that Mr. Riveles would prevail. The issue there being whether theft, which is an aggravated felony under 1101-843-G, includes aiding and abetting liability. Were the Supreme Court to find that is in fact so, that would apply to Mr. Riveles. Now however, if Mr. Duenas, if he were to not prevail, that still doesn't foreclose Mr. Riveles' argument. Because the remaining argument that is not addressed in Duenas is California state aiding and abetting liability broader than the federal generic definition. That is not an issue pending before the Supreme Court. However, that issue is pending before this court in Vidal. Which has been held for Duenas. Exactly. Now if Mr. Vidal were to prevail, logically again Mr. Riveles would prevail. However if he were not, Mr. Riveles' claim still doesn't fail. Because the issue in Vidal addresses the promotion and instigation aspect of aiding and abetting liability. What was not addressed in the briefs in Vidal, but was subsequently raised in the petition for rehearing, was the whole argument regarding the natural and probable consequences and the fact that the California interpretation is much broader than the federal interpretation. So are you saying, you would like us to proceed and decide in your client's favor without waiting for either the Supreme Court or the In-Bank Court? Well I think that that could be done. Especially just on the first argument alone, that the issue covered in 11-358 is actually broader than that in the federal definition of what constitutes manufacturing. But then we'd be into the modified categorical approach, wouldn't we? And then we'd have to address that aspect of the case. I do believe so. But as this court has held, with the modified categorical approach, all the government needs to do is to submit adequate documentation, which really is not that burdensome of a request. And they haven't done that according to you? That's correct. Thank you. All right. Good morning, Your Honors. May it please the Court, Jonathan Shapiro on behalf of the United States Department of Justice, to confirm the non-conviction for planting and cultivating marijuana in violation of California Health and Safety Code Section 11-358 is an aggravated felony. If it is an aggravated felony, as the government contends, then the immigration judge was correct at Appellant's 2004 deportation hearing to conclude that he was not eligible for cancellation of removal under Section 1229B. And likewise, the District Court below was correct in denying Appellant's motion to dismiss the indictment, in this case due to a purportedly defective deportation. And Section 11-358 is an aggravated felony because the conduct that is prohibited there is also punishable under the Controlled Substances Act. Section 841 of the Controlled Substances Act makes it a crime to manufacture a controlled substance. As Appellant acknowledges and admits, manufacture under that federal law includes production and processing, and then production is further defined to include planting, cultivating, and harvesting, the precise conduct that is prohibited by Section 11-358. This really comes down to the drying aspect. And that's what this comes down to. And, Your Honor, I believe that processing under federal law is broad enough to encompass the drying of marijuana. Processing means drying under the federal law, and drying means drying under the state law. It might be that the California legislature saw some distinction or thought that, for whatever reason, in drafting the statute, they included drying and processing. But I think Congress would be surprised to learn, when they prohibited the manufacture of controlled substance, that that doesn't also include the drying of marijuana, that that conduct of manufacturing. And, in fact, I mean, the plain meaning of these words, we're talking about preparation processing, in order to render marijuana usable in a smokable form, it's going to be dried. In other words, processing, I think, necessarily includes drying. So as a categorical matter, the conduct that's prohibited under Section 11-358 is also prohibited under federal law. Beyond that, we know... What if you're just drying the marijuana to put it in an arrangement, you know, like dried flowers? I think that would still be... Under California law, that would be prohibited. And I think it would be prohibited... Yes, Your Honor. Federal law. I do, Your Honor. Yes. Beyond that, under this Court's authority, in the case of United States v. Williams... I'm not being totally facetious. We have dried flowers. We go up to Santa Barbara on Market Day. They have dried flowers of all sorts of plants, you know. I never look closely to see. But I don't think that... I appreciate that, Your Honor. I don't think that the purpose that the controlled substance is going to be put to is controlling. For example, if somebody were to grow hemp to make rope, and that's marijuana, it's prohibited under federal law. Really? So why... All those hemp shirts they sell at the hemp shop in Georgetown, Wisconsin, are in violation of federal law? The shirts themselves are not, Your Honor, but the hemp, I understand, is grown abroad and the textiles are created abroad. Really? So they're not aiding and abetting, huh? I don't believe so, Your Honor. That's interesting. But that, in any event, is interesting, and not before. I know there's a Justice Department right there in Washington. Would they make a big deal that it's a different kind of... It might be, Your Honor, and maybe I've gone too far afield with my example, but... You don't need to wonder. It might be that there is hemp that doesn't include THC, but... I think that's... Yeah, I think that's got to be it, because I can't believe... Beyond that, Your Honor, the charging document in connection with appellants underlying the 1999 conviction for planting and cultivating marijuana charges him in the conjunctive with planting, cultivating, harvesting, drying, and processing. So when he pleaded guilty to that charging document under United States v. Williams, he was admitting each of those facts. In other words, he admitted to planting, cultivating, and harvesting, and that conduct alone is sufficient under federal law to violate the Controlled Substances Act. In other words, he committed an aggravated felony when he committed those acts. Turning next to the issue of aiding and abetting an appellant, it says that we need to assume that he was convicted of the 1999 offense as an aider and abetter. We don't need to assume that because, as we set forth, he admitted at the immigration hearing that he was growing a marijuana plant. He had possession of a marijuana plant. In other words, he was acting as a principal. The focus here needs to be on what... What did Ravella's plea... In Williams, there was a plea to specific facts, wasn't there? It was a plea to the charging document. But what was in the charging document? I thought there was a difference between the nature of the plea here. He just pled the violation of 11-358. Does he plead to all of the specified elements the way they did in Williams? He did, Your Honor. He pleaded to count one of the information. Well, what was count one? The count one charged him with planting, cultivating, harvesting, drying, and processing. I'd note that that isn't also merely just mirroring the statutory language because the statutory language is actually in the disjunctive, not in the conjunctive. So when he pleaded guilty to that, Your Honor, I suggest that he was admitting that he did each of those acts. And that's what Williams stands for. If I may address the issue that was before the immigration judge in concluding that this was an aggravated felony. As I noted, he admitted that it was an aggravated felony or that he was a principal, rather. And that's not a problem under Taylor because the immigration judge wasn't considering documents. In fact, he wasn't considering documents at all. The appellant stood up under oath before the immigration judge and said, I did this. And that's where the focus needs to be because it's at that point that the determination is made that he's not eligible for cancellation of removal. And it's whether the immigration judge was correct or not that's subsequently being reviewed by the district court judge. So I think that we're not in the realm of aiding and abetting. We have facts here that the appellant himself admitted. Beyond that, aiding and abetting under California law is no broader than aiding and abetting under federal law even if we were to assume he was an aider and abetter. And that's what this court held in Vidal where it said the exact same elements that you have to prove under California law for aiding and abetting liability are the same elements under federal law. And that includes promotion and instigation and that includes the natural and probable consequences. I don't know if Your Honor would like me to address the Duane in this matter. I don't think that the Supreme Court's resolution of that case necessarily resolves our issue because that does come up in the context of theft defense and this court's particular definition of theft defense for aggravated felony purposes which requires a perpetrator to take actual physical possession or exercise control over an item. And this court has concluded that California theft defense, which is at issue there, which is Vehicle Code 10-8-51, which is theft of a vehicle, does not require the actual physical taking or exercising control. We're not dealing with the theft defense here. In fact, we're just dealing with aiding and abetting under California law, aiding and abetting under federal law and whether or not they're coextensive. Since this court has concluded that they are, I believe that it is basically not overbroad. With that, does Your Honor have any questions? The government urges this court to rely on Williams and find that the charging document alone was sufficient. It's not, and this court has stated so before en banc in Corona Sanchez 291F3 at 12-11. In addition, the documents that the government has submitted are inadequate under... Well, doesn't Corona Sanchez... I was just trying to look back on that because I was curious. I'm looking at the document here. The government does note that it was charged in the conjunctive so that when the... So the charging document says that he was being charged with the crime of cultivating marijuana in violation and that was committed by Rivelas who did unlawfully plant, cultivate, harvest, dry and process marijuana. Now the plea simply says, count one, charge 11-358HS. And you think that's encompassed by Corona Sanchez? I think that... Because it's not charging it just in the language of the statute because it's now made it conjunctive as opposed to disjunctive. Well, I think the charging document and Corona Sanchez combined with what this court held in Pinuliar where the court found that an information and abstract judgment was insufficient to show whether that person had in fact, what they had in fact pledged to, whether that included aiding and abetting liability. I do believe the government needs to submit not only the information or complaint but some type of plea colloquy, something that is accepted under Taylor and Shepard under the modified approach to show what conduct actually occurred. Okay. Thank you. All right. The case argued will be submitted and we thank both counsel for a very good argument.
judges: Fisher, Callahan, Collins